Bradley A. Bening  SBN 104221
George W. Dowell  SBN 234759
WILLOUGHBY, STUART & BENING, INC.
50 W. San Fernando St., Suite 400
San Jose, California 95113
Telephone: (408) 289-1972
Facsimile:  (408) 295-6375

Attorneys for Defendant
DAN PULCRANO

Christopher E. Schumb  SBN 116828
LAW OFFICES OF CHRISTOPHER SCHUMB
10 Almaden Blvd. Suite 1250
San Jose, California 95113
Telephone: (408)271-3245
Facsimile:  (408)289-1509

Attorney for Defendant
BOULEVARDS NEW MEDIA, INC.

Donald R. Taylor
Miguel S. Rodriguez
    (Admitted Pro Hoc Vice)
TAYLOR DUNHAM & BURGESS, LLP
301 Congress Avenue, Suite 1050
Austin, Texas 78701
Telephone:  (512)473-2257
Facsimile:  (512)478-4409

Attorneys for Plaintiff
JOHNATHAN BRANT FINLEY

# IN THE UNITED STATES DISTRICT COURT

## IN AND FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHNATHAN BRANT FINLEY,<br><br>           Plaintiffs,<br><br>vs.<br><br>DAN PULCRANO; BOULEVARDS NEW MEDIA, INC.,<br><br>           Defendants. | No. C 08-00248 PVT<br><br>JOINT CASE MANAGEMENT STATEMENT |

1

1

## I.    **Jurisdiction and Service**

2        The basis for the Court's subject matter jurisdiction in this matter is diversity of citizenship,

3 with plaintiff Jonathan Brant Finley ("Finley") being a citizen of the state of Texas, currently

4 domiciled in Mexico, and defendants Dan Pulcrano ("Pulcrano") and Boulevards New Media, Inc.

5 ("BNM") being citizens of the state of California.

6        Of the parties currently named in this suit, all have entered an appearance.

7

## II.    **Facts**

8        PLAINTIFF ALLEGES AS FOLLOWS (certain allegations of which are disputed by

9 Defendants): Starting in 2001, Plaintiff Finley developed, as a sole proprietorship, the business

10 known as mrmovietimes.com.  At that time, as it is today, mrmovietimes.com was an internet based

11 service that allowed users to look up local movie times.  The service was free and

12 mrmovietimes.com generated its revenue from advertising displayed on the website.  Under the

13 rubric of mrmovietimes.com, Finley operated several city-specific websites such as

14 AtlantaMovieTimes.com, AustinMovieTimes.com, BostonMovieTimes.com and

15 BuffaloMovieTimes.com.

16        Pulcrano is the chief executive of Boulevards New Media.  Boulevards is a business that

17 owns several California bay area weekly newspapers as well as several city domain websites

18 including Dallas.com, SanAntonio.com and Houston.com.

19        In early 2004, Pulcrano made the first contact regarding his desire to purchase MMT by

20 approaching Finley to persuade Finley to enter a deal with Pulcrano and Boulevards.  Pulcrano told

21 Finley he was willing to invest in Finley's business.  On April 16, 2004 Pulcrano formed a new

22 entity called MrMovieTimes, Inc. (the "Corporation").  Pulcrano made himself the CEO of the

23 Corporation.

24        At the time, Finley's business was profitable.  Over one month later, Pulcrano then offered

25 to sell Finley stock and provide him options to purchase more stock in the Corporation if Finley

26 would put his sole proprietorship into the Corporation.  In addition, Pulcrano promised that Finley

27 would be hired by the new entity for three years and, during that term, the new entity would pay

28 him $3,000 per month plus 40% of the new entity's profits.  Pulcrano represented that the

Joint Case Management Statement

1  Corporation would be run as a separate entity from Pulcrano's other business ventures. Pulcrano

2  also represented that his extensive contacts in the media and advertising world would greatly

3  enhance the value of the mrmovietimes enterprise. Many of these misrepresentations were made in

4  Texas.

5          In reliance on the representations of Pulcrano, Finley agreed to give up 100% of his

6  ownership interest in the business of mrmovietimes.com to the new entity, in exchange for a 15%-

7  40% stake (depending on his exercise of options) in the Corporation.   In June 2004, Finley and

8  Pulcrano signed the closing documents for this transaction in Austin, Texas.

9          Over the next three years, Finley diligently worked to grow the business of

10  mrmovietimes.com. Advertising revenue increased from approximately $1,200 per month in early

11  2004 to a high of approximately $42,000 per month by July 2007.

12          Despite Finley's efforts and success, Boulevards continued to maintain complete control

13  over all revenues and profits of the enterprise and has never acted to place the enterprise into the

14  Corporation which remains an empty shell. In fact, the Corporation has held, at most, one board

15  meeting over three years ago, has never appointed a third director, has never held a shareholder's

16  meeting, has never secured a tax identification number, has no bank accounts. Boulevards'

17  accounting personnel manage mrmovietimes.com's advertising revenue and, on information and

18  belief, this advertising revenue flows into Boulevards' bank accounts where it was commingled

19  with non-mrmovietimes assets. Despite Finley's requests, defendants had no response to explain

20  why Boulevards was commingling mrmovietimes' funds. Upon information and belief, Pulcrano

21  never obtained a tax identification number or bank account for MrMovieTimes, Inc. Rather than

22  Finley being paid by MrMovieTimes, Inc., Finley's salary was paid by Boulevards. Pulcrano and

23  Boulevards have also refused to provide Finley with information concerning the income, expenses

24  and financial status of the mrmovietimes.com enterprise.

25          DEFENDANTS ALLEGE AS FOLLOWS (certain allegations of which are disputed by

26  Plaintiff): This case arises out of the creation of a California company named Mr.MovieTimes, Inc.

27  (MMT), that was formed between plaintiff and defendant BNM in early 2004. At the time the

28  company was formed, Finley was struggling to maintain his internet movie listing website,

3

1   Mr.MovieTimes.com, and facing possible litigation from outside entities who were accusing him of
2   misappropriating their data without proper licensing. As a result he reached out to BNM and Dan
3   Pulcrano, CEO of BNM, seeking to enter into a joint venture. His initial overture went unanswered,
4   and some time later, Mr. Pulcrano, acting in his capacity as CEO of BNM, contacted Finley about
5   working together.

6          Shortly thereafter, Finley and Pulcrano met to negotiate the terms of the venture. It was
7   decided among the parties that they would create a new company, Mr.MovieTimes, Inc. (MMT),
8   wherein Finley would contribute his existing enterprise, Mr.MovieTimes.com and BNM would
9   contribute up to $50,000 to get MMT profitable. As a result of this arrangement, Finley would
10  initially have a twenty percent (20%) interest in MMT and BNM would have an eighty percent
11  (80%) interest in MMT. Additionally, Finley was provided options to acquire more shares of MMT
12  during the first three years of his employment such that he could eventually own forty percent
13  (40%) of the company. To date, Finley has not sought, nor been prohibited from the exercise of his
14  vested options.

15         As part of the negotiations between the parties, Finley was also provided with a three year
16  employment agreement wherein he was to be paid a salary of $3,000 per month, with quarterly
17  bonuses based upon the profitability of MMT. At all times relevant to the employment contract,
18  MMT has paid Finley his salary as well as earned bonuses. Moreover, as a direct result of BNM's
19  venture with MMT, the threat of litigation that was facing MMT before the joint venture has been
20  resolved through the intervention of Mr. Pulcrano, and MMT is now able to pay for the movie
21  listings that are vital to its purpose, as opposed to employing computer algorithms designed by
22  Finley to illegally copy movie listing data from other sites.

23         As a direct result of the conduct alleged in Finley's complaint, MMT's profitability has been
24  enhanced through BNM's keeping MMT within its corporate accounting. This has occurred
25  because BNM is able to file a consolidated tax return for both entities, which provides MMT greater
26  profitability for a host of reasons. First, it allows MMT to utilize BNM's in-house accounting staff;
27  thus not incurring additional payroll or similar administrative costs. Second, because MMT profits
28  are consolidated with affiliated entities in a joint tax return, and then counted in conjunction with

4

Joint Case Management Statement

1  any losses, it may escape payment of any taxes.

2      Within the last six months, MMT has opened a bank account, renamed the corporation,

3  conducted board meetings, and added an additional board member.  It has also recently acquired a

4  potentially more profitable web address - www.movietimes.com.  Prior to filing his lawsuit, Finley

5  approach BNM about a potential buyout, and offered approximately $2,000,000 to acquire its share

6  of MMT.  BNM declined, and Finley filed his suit shortly thereafter.

7                    **III.    Legal Issues**

8      Plaintiff has brought claims against Defendants for the violation of the Texas Securities Act,

9  common law fraud, statutory fraud under Texas law and unjust enrichment.  Defendants deny

10 liability under these causes of action.

11     Defendants raise additional legal issues which, as framed by Defendants (and disputed by

12 Plaintiff), are as follows:

13     (1) Choice of Law - Plaintiff originally pled his Complaint in Texas state court.

14 Subsequently, defendants have successfully removed the case to Federal Court and then had it

15 transferred to California.  Plaintiff wishes to maintain the Texas causes of action, believing that the

16 conduct alleged took place prior to the inception of MMT or any governing agreements, and that

17 they occurred in Texas.  Defendants acknowledge that precedent holds that the law of the transferee

18 venue would normally remain; however, they also believe that California law is more appropriate

19 because the conduct alleged stems from failures to conform with the terms of the Contribution

20 and/or Employment Agreements, which specifically direct that all disputes are to be governed by

21 California law.  Additionally, all of the assets of MMT are currently held in California and/or

22 Mexico, its board meets in California, and it has retained California counsel to handle its normal

23 affairs.

24     (2) Plaintiff's Remedies Sought - Plaintiff seeks among other remedies (including damages

25 in an amount to be determined after a review of the records of MMT and other discovery),

26 rescission, which would presumably return the URL addresses and related codes contributed by

27 Finley back in his sole custody and the monies contributed by BNM back in its sole possession.

28 Defendants believe that this remedy is impossible to implement however, because the passage of

5

1  time and the increase in value to MMT that has resulted from the efforts and contributions of both

2  parties would not be taken into consideration.  Defendants believe that the only available remedies,

3  should plaintiff prevail, are for compensatory damages and/or dissolution of the company.

**IV.    Motions**

5  To date, defendants Pulcrano and BNM have filed motions for dismissal and transfer, with

6  the motions for transfer being granted in December 2007, moving the case to its current venue in

7  this Northern District of California.  Following discovery, defendants Pulcrano and BNM expect to

8  file a motion for summary judgment.  If the parties cannot agree to stipulate to a protective order

9  regarding certain proprietary documents, then defendants will move for a Protective Order.

**V.    Amendment to Pleadings**

11  Finley reserves the right to assert any additional claims available to him that either are

12  known to exist or come to light following discovery.  Defendants Pulcrano and BNM do not expect

13  to amend their pled defenses, but reserve the right to assert any counter-claims against Finley that

14  may arise following disclosure and discovery, and in the event the he elects to amend his complaint.

15  Therefore, Defendants propose September 1, 2008 as the cutoff for any amendments to the

16  pleadings.

**VI.    Evidence Preservation**

18  The evidence in the possession of Finley has been preserved through his standard practices.

19  The evidence in possession of defendants has been preserved through their standard business

20  practices.  At this time, defendants believe that certain evidence may reside on computers and

21  servers that are owned by MMT but in the sole custody and control of Finley in Mexico.

22  Defendants have not identified evidence which may reside on MMT-owned servers.  MMT does not

23  own any servers.  MMT hires third parties whose servers MMT uses.  Such servers are not in the

24  sole custody and control of Finley but are equally accessible to all parties.

**VII.    Disclosures**

26  The parties engaged in a meet and confer subject to FRCP 26, on March 10, 2008.  At that

27  time they agree that mutual non-expert initial disclosures would be made on April 29, 2008.  The

28  categories of documents which will be exchanged are as follows:

6

Joint Case Management Statement

By Plaintiff:

(a) all communication between Finley and BNM (including officers, directors, agents, attorneys and representatives)

(b) all contracts involving mr.movietimes.com where Finley is a signatory in any capacity.

(c)  all communications from Finley to Pulcrano related to MMT.

(d)  all communications from Pulcrano to Finley related to MMT.

(e) all documents referencing Pulcrano in his capacity as representative of MMT.

(f) all documents referencing Cinemasource

(g) all contracts where MMT is a party


By Defendants:

(a) all communications between Finley and BNM (including officers, directors, agents, attorneys representatives) related to MMT.

(b) all communications between Finley and Pulcrano related to MMT

(c) all documents referencing Finley in his capacity as an employee, owner, and/or director of MMT.

(d) all contracts involving mr.movietimes.com where Pulcrano is a signatory in any capacity.

(e) all books and records of MMT including all accounting records and documents supporting such accounting records (this category includes all historical iterations of such records)

(f) all documents referencing Cinemasource

(g) all contracts where MMT is a party

(h) all tax returns of MMT

(i) the corporate formation documents of MMT

(j) minutes of meetings of the Boulevards board of directors related to MMT.

(k) minutes of meetings of the MMT board of directors; MMT consents and notices

(l) MMT's stock ledger

(m) documents related to bank accounts held in MMT's name.

7

## VIII.  Discovery

No discovery has been taken to date.  The parties anticipate discovery through deposition and written discovery of Finley, Pulcrano, and BNM.  In addition, Plaintiff will seek the depositions of individuals responsible for the accounting and information technology management of BNM/MMT, all MMT board members, and third parties including lenders to BNM.    In addition, Defendant Pulcrano seeks the deposition of Cinemasource.

## IX.    Class Actions

This is a non-complex complaint alleging fraud.  There is no possible class.

## X.    Related Cases

At this time there are no related cases pending.

## XI.    Relief

Plaintiff is seeking rescission of the agreement whereby Plaintiff agreed to provide his interest in the business of mrmovietimes.com in exchage for stock in MMT.  Plaintiff is also seeking monetary damages in the form of his actual, special, and consequential damages, exemplary and/or additional damages in an amount to be determined by the jury, attorney's fees, pre-judgment and post-judgment interest at the highest available rate under law, costs, and such further relief to which Plaintiff may show himself justly entitled.    Defendants request that should defendants prevail, they would request that this court award their reasonable attorneys' fees and costs incurred in defense.

Should the court find any liability against defendants, the defendants request that the court view the value of Mr.MovieTimes.com, inclusive of pending litigation, as it existed before its joint venture with BNM, and its current value following its venture with BNM, and award Finley any loss calculated.

## XII.    Settlement and ADR

The parties are willing to engage in various forms of settlement, including mediation, but only if costs are equally borne and the settlement proceedings occur within 50 miles of San Jose, California.

///

### XIII.  Consent to Magistrate Judge For All Purposes

The parties consent to a Magistrate for all purposes including trial and entry of judgment.

### XIV.  Other References

The parties do not have interest in pursuing resolution through binding arbitration.

### XV.  Narrowing of Issues

Defendants believe that the following issue, as framed by them, is the subject of narrowing: As it is currently pled, Finley's complaint includes allegations of securities fraud despite there never being a transaction that involved the purchase and/or sale of securities.  Finley and BNM each contributed assets and/or capital in order to form MMT.  In return they each took pro-rata ownership shares relative to their contribution.  Therefore, defendants believe that this matter should be narrowed to a single cause of action for fraud.

Plaintiff disputes this characterization because shares in MMT were exchanged as part of the initial transaction involving the parties to this dispute.

### XVI.  Expedited Schedule

Defendants believe that due to the narrow scope of Finley's allegations, and the limited universe of witness and evidence, that this matter will be appropriate for an expedited schedule.

### XVII. Scheduling

PLAINTIFF PROPOSAL:

| Proposed Trial Date: | December 1, 2008 |
| --- | --- |
| Expert Disclosure Date: | October 3, 2008 |
| Discovery Cutoff Date: | October 31, 2008 |
| Last Day for Dispositive Motions: | October 31, 2008 |
| Pre Trial Conference: | November 17, 2008 |

///

///

///

Joint Case Management Statement

DEFENDANTS' PROPOSAL

| Proposed Trial Date: | February 9, 2009 |
|---|---|
| Expert Disclosure Date: | November 15, 2008 |
| Discovery Cutoff Date: | December 31, 2008 |
| Last Day for Dispositive Motions: | December 1, 2008 |
| Pre Trial Conference: | January 15, 2008 |

## XVIII.  Trial

All parties have requested a jury trial, and expect that trial will last five (5) days.

## XIX.    Disclosure of Non-party Interested Entities of Persons

MovieTimes.com, Inc., is an interested party, as the assets and ownership of the business of Mrmovietimes are the subject of this dispute.  All parties to the action are either purported shareholders or board members of MovieTimes.com, Inc.

## XX.    Any Other Matters

At this time the parties are unaware of any other matters for the Court's attention.

///

///

///

10

Joint Case Management Statement

1   DATED: April 29, 2008

2                                           WILLOUGHBY, STUART & BENING

3

4                                           By

5                                              BRADLEY A. BENING
                                               Attorneys for Defendant DAN PULCRANO
6
    DATED: April 29, 2008
7
                                            LAW OFFICE OF CHRISTOPHER E. SCHUMB
8

9                                           By

10                                             CHRISTOPHER E. SCHUMB
                                               Attorney for Defendant BOULEVARDS NEW
11                                             MEDIA

12

13  DATED: April 29, 2008

14                                          TAYLOR DUNHAM & BURGESS, LLP

15

16                                          By

17                                             MIGUEL S. RODRIGUEZ
                                               Attorneys for Plaintiff JOHNATHAN BRANT
18                                             FINLEY

19

20

21

22

23

24

25

26

27

28

                                    11
    Joint Case Management Statement